UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEVEN K. BROWN,

    Plaintiff,

v.                                                    Case No:   2:13-cv-416-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on June 5, 2013. Plaintiff, Steven K. Brown, II seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **Reversed and Remanded** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

    **I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.  Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B. Procedural History

On October 28, 2010, Plaintiff filed an application for disability insurance benefits and supplemental security income asserting a disability onset date of June 1, 2009. (Tr. p. 87, 88). Plaintiff's applications were denied initially on December 10, 2010, and upon reconsideration on February 25, 2011. (Tr. p. 94, 98, 106, 109). A hearing was held before Administrative Law Donald G. Smith ("ALJ") on December 11, 2012. (Tr. p. 38-86). The ALJ issued an unfavorable decision on January 14, 2013 (Tr. p. 18-29. On April 15, 2013, the Appeals Council denied Plaintiff's request for review. (Tr. p. 1-6). The Plaintiff filed a Complaint (Doc. 1) in the United States District Court on June 5, 2013. This case is now ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (See, Doc. 18).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[1](citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in

---

1 Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. Ap. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

  The ALJ determined that Plaintiff met the Social Security Act's insured status requirements through September 30, 2014. (Tr. p. 20). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2009, the alleged onset date. (Tr. p. 20). At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: scoliosis, obesity, flat feet, hearing loss, major depressive disorder, bipolar disorder, learning disorder, borderline intellectual functioning, and personality disorder citing 20 C.F.R. § 404.1520(c) and 416.920(c). (Tr. p. 20-21). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. p. 21). At step 4, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform light work except that Plaintiff can lift 20 pounds occasionally and 10 pounds frequently; can sit 6 hours per workday; can stand/walk 5 hours per workday, but only 2 hours at a time; can perform simple, routine, repetitive tasks; can handle ordinary and routine changes in work setting or duties; can frequently interact with the public, coworkers and supervisors; and can maintain attention/concentration for 2 hours and then needs a 10 minute break. (Tr. p. 23). The ALJ determined that Plaintiff could not return to his past relevant work as a fast food worker, kitchen helper or stock clerk. (Tr. p. 27). The ALJ determined that

Plaintiff is a younger individual with at least a high school education, and that transferability of job skills is not material. (Tr. p. 27). The ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. p. 27). Relying on the vocational expert's testimony, the ALJ determined that Plaintiff could perform the occupations of cafe´ attendant, (DOT 311.677-010), light unskilled work; merchandise marker (DOT 209.587-034) light unskilled work; and cleaner, housekeeper (DOT 323.687-014), light unskilled work. The ALJ concluded that Plaintiff was not under a disability from June 1, 2009 through the date of the decision. (Tr. p. 28).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356,

1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II. Analysis**

Plaintiff raises three issues on appeal. As stated by Plaintiff they are:

(1) Whether the ALJ properly rejected the presumption that the Plaintiff is disabled based on the Listing 12.05C given that the record documents valid IQ scores of 67 and 69 combined with numerous other impairments significantly affecting the Plaintiff's basic work activities, including scoliosis, obesity, flat feet, hearing loss, major depressive disorder, bipolar disorder, and personality disorder.

(2) Whether the ALJ properly considered the opinions of a State agency psychological consultant and that of the Plaintiff's treating psychiatrist that the Plaintiff has marked limitations in his ability to interact with supervisors given that the ALJ ignored the explanation that these limitations are due to the Plaintiff's excessive sense of entitlement without earning it and due to the Plaintiff's very long history of inability to hold a job.

(3) Whether the Appeals Council violated the Eleventh Circuit requirement to "adequately" consider new and material evidence given that it only generally and perfunctorily stated that it found no basis for changing the basis for the ALJ's decision given that the Plaintiff submitted to the Appeals Council objective sleep study evidence that he in fact suffers from a medically determinable impairment of "severe obstructive sleep apnea syndrome with severe hypoxemia"; and given that at the hearing level the record lacked the diagnosis and objective evidence to support the limitations alleged by the Plaintiff due to this impairment.

**A. Appeals Council Issue**

Plaintiff asserts that the Appeals Council erred in failing to consider new, material, and chronologically relevant evidence concerning Plaintiff's sleep apnea. The Commissioner asserts that the record supports the ALJ's decision and the additional medical evidence does not show that it caused additional limitations as to Plaintiff's ability to work. The ALJ's Decision was dated January 14, 2013. On December 30, 2012, the Plaintiff participated in a sleep study due to

indications of hypersomnolence, and obstructive sleep apnea syndrome. (Tr. p. 526). On January 15, 2013, Ferreira Gregory, M.D. signed a Documents Review Report. (Tr. p. 526). Dr. Gregory's impression was that Plaintiff has severe obstructive sleep apnea syndrome with severe hypoxemia. (Tr. p. 526). At the conclusion of the sleep study, Dr. Gregory recommended that Plaintiff obtain a CPAP plus 20 with supplemental oxygen. (Tr. p. 526).

In his Decision, the ALJ mentioned Plaintiff's sleep apnea. (Tr. p. 25). The ALJ stated, "[i]n terms of the claimant's sleep apnea, the record contains few, if any, complaints of a similar nature to a medical source. As the claimant has sought little, if any, treatment for these alleged symptoms, the undersigned finds that they are not as severe as alleged, and that the claimant's testimony is less than fully credible in this regard." (Tr. p. 25). Plaintiff mentioned his sleep apnea problems to Patricia Hough, M.D. on June 19, 2012. (Tr. p. 490). Plaintiff testified at the hearing, that he tends to fall asleep "here and there." (Tr. p. 54). Plaintiff testified that there are days when he falls asleep sitting watching the television, and will fall asleep for two to three hours. (Tr. p. 19). He falls asleep at a friend's house, and he talked about this problem with his doctors and was told it was sleep apnea. (Tr. p. 58). He indicated he was going for a sleep study on December 30, 2012. (Tr. p. 58).

The Appeals Council considered the additional records of the sleep study for Dr. Gregory. (Tr. p. 1-5). The Appeals Council stated, "[w]e found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review." (Tr. p. 1). One rule that the Appeals Council applied stated that if it received "new and material evidence and the decision is contrary to the weight of all the evidence now in the record" then it would have granted review. (Tr. p. 1).

A claimant is generally permitted to present new evidence at each state of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007), and 20 C.F.R. §404.900(b). Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Id*. An Appeals Council must consider new and material evidence that "'relates to the period on or before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id*. (20 C.F.R. §§404.970(b), 416.1470(b)). New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id.*

In the instant case, Plaintiff's sleep study was conducted prior to the date of the ALJ's decision, and the report diagnosing Plaintiff with severe obstructive sleep apnea syndrome with severe hypoxemia was signed on January 15, 2013, one day after the ALJ's Decision. At step two of the sequential evaluation process, the ALJ determined that Plaintiff had the following severe impairments: scoliosis, obesity, flat feet, hearing loss, major depressive disorder, bipolar disorder, learning disorder, borderline intellectual functioning, and personality disorder. The ALJ did not consider sleep apnea a severe impairment.

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments

will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

Plaintiff's diagnosis of severe obstructive sleep apnea syndrome with severe hypoxemia is not slight and its effect not minimal on Plaintiff's ability to work. The ALJ did find other impairments or combination of impairments severe, however failed to consider Plaintiff's sleep apnea severe and failed to consider it in combination with Plaintiff's other impairments asserting that Plaintiff failed to seek treatment for the sleep apnea and that his testimony was less than fully credible regarding his somnolence. His symptoms of falling asleep during the day at various times and sleeping for two to three hours at a time would interfere with his ability to work. The diagnosis of severe sleep apnea syndrome with severe hypoxemia confirmed his impairment. The Commissioner argues that the Sleep Study showed that a CPAP provided substantial improvement, however, it was only recommended and there is no evidence showing that Plaintiff obtained a CPAP. The Appeals Council should have reviewed the ALJ's decision in light of the new medical evidence of Plaintiff's severe obstructive sleep apnea syndrome with severe hypoxemia because

the evidence was new and material and related to the period of time on or before the date of the ALJ's decision. Further, the ALJ specifically commented that Plaintiff had failed to seek treatment for these impairments and that his testimony was not fully credible as to his impairments, therefore this new medical evidence conflicts with the ALJ's findings, and the findings are contrary to the weight of the evidence currently of record. The Court determines that the Appeals Council erred in failing to review the ALJ's decision in light of the new medical evidence submitted to the Appeals Council concerning Plaintiff's sleep apnea and hypoxemia.

### B. Listing 12.05C

Plaintiff argues that Plaintiff meets Listing 12.05C, and the ALJ erred in failing to find that Plaintiff met this Listing. The Commissioner argues that Plaintiff failed to meet his burden of showing that his impairments met the requirements of Listing 12.05C.

To meet the requirements of a listing, a plaintiff must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). The burden is on Plaintiff to show that he meets the Listings. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To meet a Listing, a plaintiff must have a diagnosis included in the Listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 1525(a) – (d)). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings

to determine whether the combination is medically equal to any listed impairment." *Id*. (citing 20 C.F.R. § 404.1526(a)).

> Listing 12.05 provides in part as follows:
>
> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.[2]
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. pt. 404, subpt. P., app. 1, § 12.05.

The structure of Listing 12.05 differs from other mental disorder listings by containing four sets of criteria, and a plaintiff must satisfy the diagnostic description and one of the four sets of criteria. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00. In the instant case, Plaintiff argues that he satisfies the diagnostic description and Listing 12.05, Subsection C that requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.05C.

The ALJ determined that some of Plaintiff's IQ scores do meet Listing 12.05, however, the ALJ determined that the presumption that Plaintiff manifests deficits in adaptive function were rebutted by Plaintiff's higher levels of adaptive function, and therefore, did not meet the criteria for Listing 12.05C. Specifically, the ALJ found that Plaintiff's activities of daily living including using public transportation, driving a car, and using a computer indicated that Plaintiff has a higher

---

[2] On August 1, 2013, the Social Security Administration changed the terminology in Listing 12.05 from "mental retardation" to "intellectual disability," but this change in terms does not "affect the actual medical definition of the disorder or available programs or services." *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 982 n.2 11th Cir. 2013)(citing 79 Fed. Reg. 46,499, 46,501, later codified in 20 C.F.R. pt. 404, subpt. P, app.1).

level of adaptive functioning than his scores manifest, and considered Plaintiff's borderline intellectual functioning to be a severe impairment rather than finding it met or equaled Listing 12.05.

A valid I.Q. score within the 60 to 70 ranges is not conclusive of mental retardation where the "'I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.'" *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 983-84 (11th Cir. Oc. 28, 2013) (quoting *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)). Some indications of a overcoming deficits in adaptive behavior are being able to take care of personal needs, working part time, graduating from high school, having friends, attending church, driving himself, grooming himself, dressing himself, toileting himself, and bathing himself. *Id*. at 837.

In the instant case, the ALJ did not take into consideration all of Plaintiff's limitations in daily living. For example, although Plaintiff is able to drive a car, it took him approximately 10 times to pass the written test, and four times to pass the road test before he was able to obtain a license. (Tr. p. 51-52). Plaintiff's mother completed a Function Report indicating that Plaintiff can only process no more than two commands at a time, and can only carry through with one of these. (Tr. p. 268). According to his mother, Plaintiff's family remind him to feed, give water to, and walk the dog. (Tr. p. 269). He has to be reminded to wash his hair, brush his teeth, and clean after toileting, and cannot clean himself well after toileting. (Tr. p. 269-270). The chores that he performs may take him three times as long. (Tr. p. 270). Plaintiff does socialize at church and with friends, but is unable to pay his own bills or manage money. (Tr. p. 275). The ALJ failed to reconcile these further limitations on daily living to determine if Plaintiff met the Listing 12.05C. An ALJ is not required to discuss all of the evidence in the record, "'but he may not ignore evidence that does not support his decision. . . .'" *Saddler v. Astrue*, 2008 WL 2824885, *3 (M.D.

Fla. July 21, 2008) (quoting *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001)). The Court is remanding this matter for review of the additional medical evidence regarding sleep apnea syndrome, and will require the Commissioner to further evaluate Plaintiff's abilities as to daily living activities.

### C. Weight of Medical Opinions

Plaintiff asserts that the ALJ erred in rejecting the opinions of the State Agency Psychological Consultant, Dr. Visser and the Plaintiff's treating psychiatrist, Dr. Hough. The ALJ failed to adopt Drs. Visser and Hough's opinions that Plaintiff has some "marked" limitations. The Commissioner argues that the ALJ properly considered the records and opinions of Drs. Visser and Hough and properly determined the weight accorded to each.

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.,* 877 F.Supp.2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that

whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

"Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless 'good cause' is shown. *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing 20 C.F.R. §404.1527(d)(1), (2), (5); and *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). A doctor's opinion may be discredited when it is contrary to or unsupported by the evidence of record, or the opinion is inconsistent with the doctor's own medical records. *Id*. (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). "Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Id*. (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

On April 11, 2012, Kenneth Visser, PhD., a Clinical Psychologist evaluated Plaintiff and reviewed Plaintiff's prior evaluations. (Tr. p. 449-460. Dr. Visser found that Plaintiff "has intellectual limitations," and that he "enjoys other people" but "has had problems in work environments, because he feels a sense of entitlement." (Tr. p. 456). Dr. Visser found Plaintiff to have marked limitations in understanding and remembering complex instruction, carrying out complex instruction, and the ability to make judgments on complex work-related decisions. (Tr. p. 458). The ALJ found Dr. Visser's reports inconsistent because Dr. Visser determined that Plaintiff enjoyed other people, yet had problems at work because he felt entitled. (Tr. p. 26)

From June 2012 through July 2012, Patricia Hough, M.D., a treating physician, also evaluated Plaintiff. (Tr. p. 487-493). Dr. Hough completed a Medical Source Statement. (Tr. p. 487-488). Dr. Hough determined that plaintiff had a history of problems with supervisors, and had marked limitation in accepting instructions and responding appropriately to criticism from supervisors, and maintaining socially appropriate behavior and emotional stability when interacting with coworkers. (Tr. p. 488). The ALJ discounted Dr. Hough's findings asserting that her opinion was entitled to little weight because it was inconsistent with the record as a whole, and because it was inconsistent with the treating and examining sources statements that Plaintiff was cooperative, with intact thought processes and normal thought content. (Doc. 26).

Dr. Visser found that Plaintiff had difficulty at work because of his sense of entitlement, and Dr. Hough determined that Plaintiff had marked limitations in accepting instructions and criticism. The ALJ noted that Dr. Kevin Ragsdale and Dr. Robert Hodes determined that Plaintiff could perform simple work tasks which is not in conflict with Dr. Visser or Dr. Hough. (Tr. p. 26). Dr. Ragsdale determined Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, and mild difficulties in maintaining social functioning. (Tr. p. 410). Dr.

Ragsdale did not include any explanation as to these findings. Dr. Hodes provided a Case Analysis which affirmed Dr. Ragsdale's Psychiatric Review Technique with little explanation. (Tr. p. 414). Dr. Visser and Dr. Hough had concerns that Plaintiff was unable to function in a work environment due to his belief that he was entitled to promotions and his inability to interact with other workers appropriately. The ALJ did not reconcile these findings with the other medical records. The ALJ concluded that because Plaintiff is able to socialize with others and can act appropriately at medical examinations that he is able to act appropriately in work situation where he would be subject to criticism from supervisors. The Court determines that the ALJ failed to articulate sufficient reasons to discount Dr. Visser's and Dr. Hough's opinions as to Plaintiff's ability to function in a work environment.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decisions of the ALJ and the Appeals Council are not supported by substantial evidence.

**IT IS HEREBY ORDERED:**

1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to consider the report regarding severe obstructive sleep apnea syndrome with severe hypoxemia, to reconsider whether Plaintiff meets Listing 12.05C, and to reconsider the opinions of the treating, examining and consulting medical experts.

2) If Plaintiff prevails in this case on remand, the Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-cmc-124-Orl-22 which is attached to Plaintiff's Memorandum (Doc. 19).

3) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 26, 2014.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties